Our first case this afternoon is case number 4-16-05-6-0, the people of the state of Illinois v. Noshima Phelps. And for the appellant, we have Ms. Kiwari Wilson. And for the appellee, we have Mr. Manchin. You may proceed, counsel. May it please the court. My name is Salome Kiwari Wilson, and on behalf of the 4th District of the Office of the Appellate Defender, I represent Mr. Manchin. Mr. Phelps was arrested for driving on a suspended license and what was later charged as a misdemeanor obstructing identification. When Mr. Phelps was transported to the Woodford County Jail, he was strip-searched, he was subjected to a strip-search, which he now argues was unconstitutional. The facts of Mr. Phelps' case present a situation or present questions of whether or not his trial attorney, at the hearing on the motion to suppress, failed to present the constitutional arguments to the trial court in order for the trial court to determine whether the strip-search in question was constitutional. They were included in the motion, however, weren't they? Correct. And ordinarily, counsel does not have to make every argument that's included in a motion. However, in this case, the trial court tried to get further clarification from the attorney and asked him if he was making constitutional arguments. The audience for the written motion and for the oral argument was the trial court. He was, the judge was the one who was going to be making the final defending argument. Did he ask him or did he say, I don't hear you making the constitutional arguments? He said, I don't hear you making constitutional arguments, thereby rephrasing and rather characterizing the argument as simply being a statutory argument. And trial counsel made no effort to correct the trial court and say, well, I actually rest on my motion or anything to that effect. He simply continued to argue the statutory violation even after the court told him that that was not going to get his client any relief and therefore the evidence would not be suppressed. Well, are you saying this experienced trial court would not have considered the constitutional issue with regard to the strip-search? The record does not show that the court did. The court, in making its final ruling, the court simply discusses the statutory violation and says that that does not result in the suppression of the evidence because the constitution is not implicated. Therefore, the court was simply going off of what was presented in the hearing. I know the court said that when he was questioning. And in the finding. That's what he said in the finding? In the finding, he simply relies on the statutory violation and says that does not result in suppression because that's not the constitution. So counsel's failure to argue, to make the constitutional argument and rely solely on the statutory violation, even when both district cases, a case, Calvert, that he cited had told him that that would not result in relief, was unreasonable assistance. Which resulted in the evidence not being suppressed was prejudicial to Mr. Phelps. When considering whether the constitutional arguments that counsel should have been making are meritorious, this court has to begin by conducting the balancing test that was used in Bell v. Wolfish. So what specific constitutional argument are you suggesting that defense counsel should have raised? Basically that the strip-search was a violation of the Fourth Amendment under the U.S. Constitution and was a further violation of the And in referencing, or rather in looking at the Fourth Amendment under the U.S. Constitution, the Supreme Court in Bell held that the test of reasonableness under the Fourth Amendment is not capable of precise definition and mechanical application. And in each case requires a balancing of the need of the particular search against the invasion of personal rights that the search entails. So the court must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. The scope, manner, and justification factors weigh against the state and weigh towards finding that the search in this case was unconstitutional. Mr. Phelps was subjected to the humiliation of a strip-search that included an officer peering at his private parts and asking him to lift his genitals and spread his buttocks open. When the search cannot be justified either by legitimate penological interests or as a search incident to lawful arrest. In addressing the legitimate penological interest in this case, that does not justify the search because initially Deputy Piles, before searching him, had not even determined where Mr. Phelps was going to be placed. He did not finish any of the booking procedures that he should have to determine what charges Mr. Phelps was facing. The state contends that the trial court found that the police had reasonable grounds to believe the defendant had drugs and conducted a strip-search on that case. And as I pointed out in my reply brief, I don't believe that's an accurate reflection of what the trial court said. The trial court was, in talking about reasonableness, was talking about what Deputy Campbell may have taken from being informed that there had been a search warrant for the car that Mr. Phelps was driving. The warrant itself was not based on anything linking, or rather was not based on a court finding a reasonable suspicion that Mr. Phelps was involved in any drug trafficking. The warrant was simply for the car, a car that was not even registered to Mr. Phelps. It was registered to a Noshma Lawson, who is not Mr. Phelps, his son. But it was also based on the officer of witness. The GPS, right? Yes, for the car. He was in Chicago, there was a short period of time to come back. Exactly. And that's when the interception occurred. Yes, based off of him driving a suspended license. Not based off of anything any of the officers had observed Mr. Phelps doing. Because they were, again, observing the GPS of someone who had testified from his house. Well, the border suspected him of being involved in drugs. Not him, not him. It doesn't identify him. The warrant is for the car. The vehicle, I'm sorry. Yes, yes. They suspected the vehicle of being involved in transporting drugs back and forth to Chicago. Yes, and when they searched the vehicle, they didn't find, I suppose, the level of drugs that would have been transported from Chicago. They only found little bits of burnt-up marijuana cigarettes that they did not even consider important enough to collect as evidence. And they smelled cannabis. Yes, they smelled cannabis. Did the search, found the little bits of cigarettes. And so given the odor of cannabis, weren't they justified in suspecting that there may be cannabis, that he may possess cannabis? Which would take us back to the reasonableness. Once they found the cigarettes and searched his person at the scene and found nothing, the reasonableness of continued search diminishes. The search becomes more and more unreasonable as they continue finding nothing on him when they search him. They search him at the scene, then there's no drugs on him, especially because these are spent drugs or smoked-up drugs where if he had drugs on him that he was consuming in the car that would be in his clothes, they find no drugs on him. Take him to the county jail where they search him again, again, find no drugs. The search becomes more and more unreasonable to the point where now they're saying we'll strip search him when there's no basis for a continued search for drugs that they don't know he possesses. Well, I know in the record there's discussion of the nature of the clothes he was wearing, the baggy clothes, and there's also discussion of the nature of the searches that he was subjected to prior to the strip search, suggesting that they weren't thorough. Yes, as thorough, I suppose, as the strip search. But as was pointed out below, he could have taken off several pieces of the clothing that he was wearing without subjecting him to a complete strip search and still that would have been more reasonable than going straight from pat down to complete strip search. In determining the constitutionality of the search, you have to come back to reasonableness. And again, as far as we get farther and farther away from the car, from the burnt cigarettes, it becomes more and more unreasonable to continue searching him, especially to the point of something as invasive as a strip search. So you're saying arresting someone, stopping someone and smelling cannabis in the vehicle, on their person or whatever, does not mean that you can subject them to a strip search, you would have to have more than that? Especially in a situation where they've searched him beforehand and found nothing and they don't have any further information that if they continue to search him they will find drugs in his body cavities. One of the examples I provide in the brief is people versus Pettis. And in that case, the people who were arrested with the defendant told the police officers that he keeps drugs in between his buttocks. And therefore, the police officers in that case had reasonable suspicion to continue searching him beyond simply patting his clothes or checking his pockets. Because they have something that indicates a strip search will reveal that information. Well, but Pettis is dramatically different in this fact. They had a positive dog sniff and then they had two other passengers saying he's got something in his buttock. Yes, but I'm just... And they just hadn't found it yet, that's all. But here there's nothing that indicates they'll find anything in his buttocks. It's simply, it's worse that... Well, but you're arguing Pettis as if Pettis somehow substantiates your position. In this case, the facts in Pettis are so dramatically different they're not really even comparable. You're saying that in Pettis it made sense for the police to continue, where here it didn't because they had the suspicion, they smelled the odor, they searched and found nothing. Exactly. And then went to a strip search versus whereas in Pettis they had people saying he does have it in his body cavity and the dog has alerted. And therefore it makes sense to go ahead and... So you're saying we don't have near as much here as existed in Pettis. Yes. How about the policy of the Woodford County Jail? Wasn't that if the suspect was going into the general population that they do a strip search? Correct. As a matter of policy? Yes. Why doesn't that cover this situation? First, because there was no determination of whether or not Mr. Phelps was going into general population. Deputy Piles did not take the time to determine what charge Mr. Phelps was facing, which would determine whether... Well, if he reasonably believed that he was going into the general population, would that be enough? He does not have... Yes, that would be enough. Well, no, I apologize. It would not be enough because his reasonable belief is not reasonable in this case. It's not based on anything that is objectively reasonable. He's simply assuming that he's going into general population. There is nothing... Wouldn't it be objectively reasonable that if he was going to be charged with obstruction of justice, which is a felony, he would be going into general population? It's also a misdemeanor, which is what they ultimately charged him with. And that's not why Deputy Piles conducted the search in any case. Deputy Piles conducted the search because Deputy Campbell told him to. And in telling him, didn't Deputy Campbell indicate that he wanted him searched thoroughly because we're looking for dope and we haven't found it yet? Yes. However, Deputy Campbell has no reasonable belief that they'll find dope on him. He's simply telling him that because Officer McQuitter has told him, we're following this car because it's believed to be trafficking drugs from Chicago. His assumption that we're looking for dope and we'll find it on him if you keep searching is not a reasonable basis that can be imputed to Deputy Piles. They had found nothing of their original stop. They find nothing when they keep searching him. Well, they found, they found. Well, yes. Burnt marijuana cigarettes. That was so insignificant they did not collect them for evidence. Are you making that determination that it was so insignificant that was the reason they didn't do anything more? Well, they said they were small and that they didn't collect them for evidence. It is my characterization that they were insignificant. Okay. Well, when they use the term dope, were they talking about strictly marijuana or were they talking about possible narcotics as well? I do not know. They did not elaborate. If there are no further questions on the Fourth Amendment, I'd like to briefly cover the Privacy Clause under the state constitution. So under Article I, Section 6 of the Illinois Constitution, which provides greater protections than the Fourth Amendment, Illinois courts have ruled that when police have to have probable cause, essentially they have to conduct a search that implicates the Privacy Clause. And in this case, even if this court was to find that the police in question had reasonable suspicion to search him under the Fourth Amendment, they certainly did not have probable cause to search him under the Privacy Clause. Seymour and other Illinois Supreme Court cases have held that an intrusion or a search of a person's body, the most private parts of his body, is a severe intrusion into a person's privacy, which is the reason it requires probable cause. And in this case, there was no probable cause to justify the search, even with the marijuana cigarettes they found in the car. Because the constitutional arguments were meritorious and there was a reasonable probability that the trial court would have granted the motion to suppress had the constitutional arguments been made, Mr. Phelps received ineffective assistance of counsel, and this court should vacate his convictions and remand the case for a new trial. I have made two sentencing arguments, but I'll only argue the second argument and rest on the third of the briefs. So the trial court abused its discretion here in ordering Mr. Phelps to serve consecutive sentences without considering the nature and circumstances of the sentence to a total of 35 years in prison for the possession of 18.5 grams of heroin and 6.5 grams of cocaine. Although the trial court says the words that it has considered the nature and circumstances of the offense, appellate court cases in Illinois, especially people versus McPherson, have held that simply saying those words is not enough. The trial court has to put the basis for its finding of consecutive sentences being necessary on the record, which the court fails to do here. And furthermore, the record itself does not support a finding that consecutive sentences were necessary. This was a run-of-the-mill drug case. It was a low quantity of drugs, 18.7 grams of heroin and 6.5 grams of cocaine. There's nothing in the factual basis of the offense to distinguish Mr. Phelps from others convicted of the same offenses. He was not armed when he was arrested and he had not caused anybody else any harm at the time. Therefore, the circumstances show that this was not one of those exceptional cases that merits a consecutive sentence and should, in fact, have defaulted to what is supposed to be the norm of a concurrent sentence unless facts dictate the court finding consecutive sentences to be necessary. This issue was not preserved at the trial court stage and so we ask this court to consider it in terms of plain error and also if the court finds plain error is not applicable or is an alternative argument that the court consider the failure to alert the court to the fact that it hadn't considered both factors was trial counsel's ineffectiveness. If there are no further questions. I do have. I want to go back a little bit to what you started out with. Okay. What importance does the fact that this investigation defendant was the focus of this investigation, this drug investigation. He was known to drive this car. He had previously sold drugs to the officer. I think it was a supporter. And that he was known to sell heroin and he was, I guess, suspended. And when he met with Campbell, he showed him a picture and said, this is the person that we believe is going to be driving this vehicle and the vehicle that we believe has been transporting drugs. And he suspended him. Does that come into play when looking at whether or not there was a basis to search him, the strip search? I believe some of it would come into play to the extent that it was communicated to Deputy Campbell. But all Deputy Campbell was told was that there was a warrant for the car and that Officer McQuitta had made buys from Noshma Phelps before in the past. But not that night. And that night is what's critically important because they were following that car. The warrant was on that car. They were following that car. They had not witnessed him buy anything that night. And so the information he's giving Deputy Campbell, he's telling Deputy Campbell find probable cause to stop him. If they had an improbable cause or reasonable suspicion, they could have simply conducted the stop themselves. Well, they show him a picture of him and they say, if this is the driver, this person is suspended. And that is probable cause to stop him, right? Yes, for the driving offense. And Deputy Campbell goes ahead and makes his own, as the trial court puts it, makes his own probable cause by confirming that he was the driver. But, again, that has nothing to do with the ultimate strip search for the drugs. Yes, he's guilty of the traffic offense. And then he approaches the vehicle and he smells the marijuana. Yes. But, again, the reasonableness. He gives him a different name. Yes. But, again, the reasonableness of continued searching has dissipated by the time we get to the station because they keep finding nothing. And if you're balancing the right of Mr. Phelps to be not searched unconstitutionally versus the right of the legitimate interest of the police, that's diminishing as they don't find anything when they search him. So by the time they conduct a full strip search, any reasonableness that was from the cigarettes is far removed from that situation. And we're talking about the strip search being the third search. Is that right? Correct. Without even the steps that would have been taken before searching someone to put them inside the jail of asking what charges or anything like this. They simply took off his outer clothes, took him to the bathroom, and conducted the strip search. Any further questions? I don't see any. Thank you, counsel. You'll have additional time on rebuttal.  Mr. Manchin? You please the court, counsel. The defendant's claim is that trial counsel was ineffective because he did not raise the constitutional issue. The record clearly rebuts that claim. He, in fact, made the constitutional argument, both in his written one and before the trial court. He focused on the statute because the judge asked him questions. Just as counsel responded to your question, Justice White. My mind is off. That's fine. Just as we are required to change our arguments or what we plan to say based upon what the judge asked us, that is exactly what trial counsel is doing here, and that's a matter of judgment and strategy. The judge is focusing on the statute, so I'm going to answer these questions about it. That is not ineffective assistance of counsel. Counsel, it does seem like the court is saying to defense counsel, this is not a constitutional argument. Where's the constitutional argument? Is there an obligation on the part of defense counsel, once it's included in the written motion, to be responsive to that? He does respond to that. He does argue to the court in the argument that the police could not search the defendant because it was too intrusive a search and because it lacked any reasonable suspicion or probable cause to make the search. That is the exact claim that counsel is making on appeal now, that he should have argued lack of reasonable suspicion or too intrusive. He, in fact, made that argument. The trial court rejected it and found, I think if you read the record, it's clear that the trial court does find that the police had reasonable suspicion or probable cause to conduct the search. So you're referring to the trial court's response in the exchange that took place when the trial court's saying, where didn't he have probable cause? I mean, where does it say he has to have probable cause to do the search? Well, I'm referring to his final ruling. In his final ruling, he makes a finding that the police had caused the search. From my recollection of the record, and I cite the pages of the record, I believe it was 110-112 of the protective volume. Let's see. Yeah, it was 110-112 is where the court refers to that the police had reason to believe that the drugs might be found in the defendant. And I think that given the entirety of the evidence before the court and before the police, the finding of probable cause is there. We don't have to focus just on the smell of the marijuana. The general rule is that when police officers are acting together, information known to one is known to all, even if the last guy in the chain of information is not told all the information. You look at all the information as a whole. So if you look at all the information as a whole, that this guy is a known drug dealer, he's known to use this car, this car is known to travel to Chicago and back for drug deals. On this particular night, it's driven to Chicago, turns right around and comes back. The defendant is, in fact, driving the car. There's a smell of marijuana in the car. There's also inns of baggies in the car. We clicked off corners. Taken together, that does establish probable cause to search the defendant. And I submit that that would extend to a strip search. But you don't want to be conducting a strip search out there on the side of the highway. Especially when you consider that given all this other information and the pat-down and the search of the car has not shown anything, they have reason to believe there's drugs on the defendant or in this car and they haven't found it yet. I say I submit that's perfectly reasonable for the police to continue the search as probable cause. Mr. Manchin, let me stop you there. Does it take reasonable suspicion or probable cause? No, it does not. Which one? It's a strip search. It takes one or the other. I believe it is probable cause and I believe there is probable cause in this case. So it takes more than reasonable suspicion to proceed with the strip search, which would be probable cause. Am I saying that correctly? But it is an alternative if you look at the fact that they're processing the person into jail. Yes. You don't have probable cause if that's the basis. That's correct. And he was being admitted to the – the officer conducting the strip search did believe and reasonably believed that the defendant was going to be put into the general population and was conducting the search. Well, counsel says it was not a reasonable belief that he was going to be placed into the general population. You say it is. Why is she wrong and you're right on that question? Based upon what he was told, he was told that the defendant was arrested for drugs and was arrested for obstruction and that he assumed that the – his testimony was he assumed the defendant was being admitted to the jail based upon the charges. Would that be a valid assumption if the two charges were a misdemeanor DWLS and a misdemeanor obstructing of identity? The policy of the jail was to strip search anybody that was going to be admitted. At the time of this stop, given the time of the stop, it was – even if the defendant could be let go on bail or whatever, at the time of the stop it would be a reasonable assumption that at that time of night he's going to be put into the jail. I don't understand why. Based on the charge and the time of night, waiting for the determination as to exactly what the exact charges are going to be, the – Does the record reflect the nature of the Woodford County Jails, whether they have a holding area for the people with minor offenses, general population? There was no testament to that regard, just that all were put in the same area. But there's no – there's no testimony as to any segregation between a holding area and general population. So at Woodford County you're either in the jail or you're not. Correct. Based upon the testimony that was presented here, there was no questions regarding a separate holding area. The testimony was just simply that whenever somebody's admitted to jail, there will be a strip search. And I – the officer was calling – The State's position is that there's probable cause to do a strip search, and even if there was not probable cause, it was justified because it's the Woodford County Jail policy to do a strip search for anyone who's going to be placed in the general population. Did I summarize that correctly? Actually, it's correct, but I would say that the – our actual argument is that probable cause is not required because of the jail policy, but if probable cause is required, it's present. So you're saying even if there wasn't a policy for the Woodford County Jail, there was still probable cause here to do the search? Yes. The strip search? The strip search, yes. Okay. Because the defendant's whole argument is that even to put – the original argument of the defendant was that even to put them in jail, you had to have probable cause. That was the only exception to allow a strip search. They did not even challenge probable cause in the initial brief. The initial brief, the defendant made no admission at all about the trial court's findings regarding probable cause and did not even argue that there was no probable cause. He just simply cited other state cases saying that probable cause is required, and because counsel did not argue probable cause, he's therefore ineffective. So there's been a change. I'm going to come from a little different angle. Hypothetically, let's say before the strip search occurs, the authorities have decided he's going to be charged with two misdemeanors. Would the strip search then be valid under that scenario? If he was being admitted to the jail, yes. Okay. Was he being admitted to the jail if he was going to be charged with two misdemeanors? The policy as testified to by the officer is not entirely clear as to, you know, that the policy is that everybody is searched, but that sometimes when the guy is charged with a misdemeanor or lesser offense, they will make other arrangements so they don't have to be. And that would be like the holding cell just as they are? Well, that would be release on bond or bail or whatever. Well, as I understand it, they would put them in a holding cell until they decide on what the bond is going to be, and then if they can make their $100 bond or whatever the case may be for the misdemeanor, they would release and they wouldn't go into the general population. Am I wrong? I do not recall any testimony at trial regarding a separate holding cell. I'm not sure if there was. Who has the burden here? The defendant has the burden to establish the initial invalidity and we're actually one step removed from the constitutional issue because they're arguing ineffective assistance of counsel and was counsel ineffective for not raising this issue given what information was that he had in front of him or did the counsel present the issue in a less than effective way, a way that is less effective than counsel would have liked? But Piles did testify that if someone is detained on a misdemeanor, they frequently would try to give the person the opportunity to get their bail money together or whatever and let them bond out instead of processing them into the jail and subjecting them to the strip search, right? Volume 7, page 89 is where the testimony is. I'm looking at the defense brief. The testimony seems that they were not put in general population unless they've exhausted all the options in terms of finding bond. Given the time of night that this occurs, again, I think that Phelps conducted the search on the basis that the defendant was going to be admitted into the jail and he reasonably believed that. And I think that either as a part of the jail policy or the probable cause, the search was valid and counsel was not ineffective for the manner in which he presented the arguments because the trial court eventually ruled against him on the basis of finding that the police had caused to conduct the search. So to say that counsel is ineffective because he did not argue lack of cause when the trial court in fact found cause is really stretching ineffective assistance of counsel to the limits. Saying that because he didn't argue an argument that the trial court rejected, is ineffective, is the basis of the bottom line of the defendant's argument. With respect to the consecutive sentences, the defendant is asking this court to ignore the trial court's clear ruling, I am considering the nature and circumstances of this offense. And then saying that consecutive sentences are justified only by the nature and circumstances of the offense. The trial court clearly said a couple times, I am considering the nature and circumstances of the offense and I find that consecutive sentences are necessary because the defendant's history, the defendant's history of dealing in drugs is fair to take advantage of rehabilitative options, is the need to deter others, the need to deter defendants. So I think that the trial court's imposition of consecutive sentences was clearly proper. And this case is clearly distinguishable from McPherson decided by the defendant. In McPherson the defendant was sitting in jail on a drug charge. He was called to testify in a murder trial for his brother. He was found in contempt of court for his refusal to testify on multiple days during the trial. In sentencing, the trial court imposed consecutive sentences for the drugs and for the contempt as being mandatory and as being justified by the circumstances of the offense. On appeal they said no, this is not mandatory. And the court's findings, which were much less thorough than involved in this case, were not sufficient. And even if they weren't, given the nature of the offense, the defendant's lack of a criminal history, the unique circumstances of the second offense, the contempt of court, the consecutive sentences were not warranted. That is a far cry from the extensive findings made by the trial court, the defendant's extensive record here. So I submit that McPherson provides no basis to disturb the trial court's ruling. With respect to the claim, this claim was waived and it cannot be claimed error. Nor can it be ineffective assistance of counsel. What is counsel supposed to object to when the trial court says, I am considering the nature and circumstances of the offense? Objection. What? There is no basis for the trial court to have rejected during the hearing and the defendant's claim on appeal that he was prevented from having a better explanation because of counsel's actions falls when you consider the defendant refused to allow his attorney to even consider filing a motion to reconsider sentence and demanded an immediate notice of appeal. So I submit that the consecutive sentences cannot be considered either as waived or as ineffective as counsel and is clearly without merit. If there are no further questions. I don't see any at this time. Thank you, counsel. Any rebuttal, Ms. Juara Wilson? To begin, I will address the statements by the state that we've made no arguments on probable cause. We did make arguments on probable cause, especially as relates to the state constitution and the violation of the privacy clause. And we contend that there was no probable cause to justify the strip search. But furthermore, to Justice Turner's question, if Mr. Phelps had been arrested on two misdemeanor charges and was not going to be placed in general population, then there would have been, you do not require probable cause to search him. You still require reasonable suspicion. That goes to the question that was left unanswered by Florence versus the Board of Chosen Freeholders of Burlington County. It requires reasonable suspicion because the penological interests have diminished from not requiring anything at all from reasonable suspicion to probable cause to requiring reasonable suspicion because he's been charged with a minor crime, a misdemeanor, and he's not going to be placed in general population. There was testimony that they held separately people who are going to be put in general population and people who have to determine whether they're going to post bond. And in this case, Mr. Phelps was placed in a holding cell that was not general population after he was searched. A conference room, I think it's what they called it. He was put in a holding cell first and then he was taken upstairs to the conference room to be interrogated by the detectives. But he was placed in a holding cell at some point. Was he ever charged with driving while license suspended? I think the only charges that appear are the drug charges and the obstructing identification, the misdemeanor charges. It's correct, is it not, that a DWLS can either be a misdemeanor or a felon? Depending on why license was suspended? Yes. But again, all he was ever charged with was a misdemeanor and none of that is communicated to Deputy Phelps in order for him to make his determination. The questions that counsel argued that the record does not rebut the claim that counsel did not make the constitutional arguments because counsel was simply answering the questions the trial court was asking. The question the trial court was asking was, are you making a constitutional argument because I do not hear you making the constitutional argument. And the counsel does not answer those questions. Counsel chooses to ignore or rather counsel just chooses not to make the constitutional arguments and persists in the statutory ones. So I'm not sure that the state's argument addresses the argument that counsel is not making the constitutional argument by saying that. And just because counsel says the words reasonable suspicion, probable cause, less intrusive means, does not mean that counsel is making the constitutional argument. Especially because, again, when the state, when the court tells him to, he does not. When the state makes the constitutional argument, he refuses to or rather declines the court's instruction or invitation to rebut the state's argument and simply chooses not to address it. It was contained and you agree it was contained in the written motion. Yes, I agree with that part, but I say that he abandoned that by all the affirmative statements or by refusing to correct the court when the court said you're not making a constitutional argument and resting on his motion. And just quickly, briefly, on page 110, the trial court is not making findings on whether or not there was reasonable suspicion. The court is characterizing what a warrant would have meant to Deputy Campbell. That is not a trial court finding. That is simply the court saying that Deputy Campbell, after seeing the warrant, would have assumed that there was a reasonable basis found by the judge who issued the warrant. That is not a finding by the trial court below. And for those reasons, we would ask that you reverse based off of trial counsel's ineffectiveness and grant Mr. Phelps a new trial. Thank you, counsel. This matter will be taken under advisement and will be in recess until the next case.